Appeal No. 2023-1612

# In the
# United States Court of Appeals
## For the Federal Circuit

CLOUDFLARE, INC.,

*Appellant,*

v.

SABLE NETWORKS, INC.

*Appellee*

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board, Case No. IPR2021-00909.
The Honorable **Stacey G. White, Garth D. Baer, Juliet Mitchell Dirba**, Administrative Patent
Judges Presiding.

## BRIEF OF APPELLEE

Daniel P. Hipskind
**BERGER & HIPSKIND LLP**
9538 Brighton Way, Suite 320
Beverly Hills, California 90210
Telephone: 323-886-3430
dph@bergerhipskind.com

Kenneth J. Weatherwax
**LOWENSTEIN & WEATHERWAX LLP**
1016 Pico Blvd.
Santa Monica, California 90405
Telephone: 310-307-4503
weatherwax@lowensteinweatherwax.com

DATE FILED: AUGUST 9, 2023

*Counsel For Appellee*
*SABLE NETWORKS, INC.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number** 2023-1612

**Short Case Caption** Cloudflare, Inc. v. Sable Networks, Inc.

**Filing Party/Entity** Sable Networks, Inc.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: _____4/3/23_____          Signature: _____

                                Name: _____Daniel P. Hipskind_____

**FORM 9. Certificate of Interest**

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Sable Networks, Inc. | Sable IP, LLC | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐     Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable ☐   Additional pages attached

| | | |
|---|---|---|
| Nathan Lowenstein<br>Lowenstein & Weatherwax LLP | Jason Linger<br>Lowenstein & Weatherwax LLP * No longer with firm | |
| Parham Hendifar<br>Lowenstein & Weatherwax LLP | Erin E. McCracken<br>Berger & Hipskind LLP | |
| Patrick Maloney<br>Lowensein & Weatherwax LLP *No longer with firm | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑   Yes (file separate notice; see below) ☐   No ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTEREST ................................................................. ii

TABLE OF CONTENTS.................................................................. v

TABLE OF AUTHORITIES ............................................................ vii

STATEMENT OF RELATED CASES ....................................................... 1

STATEMENT OF THE ISSUES ................................................... 2

STATEMENT OF THE CASE .................................................... 2

I.    THE '593 PATENT ............................................................... 2

II.   PROCEEDINGS BEFORE THE BOARD ......................................... 5

    A.    The At-Issue IPR Petition ........................................... 5

    B.    The Institution Decision.............................................. 7

    C.    Patent Owner's Response To The Petition................................. 8

    D.    Petitioner's Reply To Patent Owner's Response ....................... 9

    E.    Patent Owner's Sur-Reply....................................... 10

    F.    Arguments At Oral Hearing .......................................11

    G.    The Final Written Decision ...................................... 12

    H.    Denial Of Request For Rehearing........................... 13

SUMMARY OF THE ARGUMENT........................................... 14

ARGUMENT ................................................................ 16

I.    STANDARD OF REVIEW.................................................. 16

II.   CLOUDFLARE WAIVED ITS NEW AND ERRONEOUS
    ARGUMENT THAT THE ERROR IN THE PETITION WAS
    ALLEGEDLY OBVIOUS AND CORRECTABLE UNDER SOME
    VAGUE AUTHORITY SUPPOSEDLY POSSESSED BY THE
    BOARD ............................................................. 18

A.     Cloudflare Never Presented Its Argument Regarding The Board's Supposed Power To Correct Obvious, But Not Typographical Or Clerical, Errors To The Board ..................... 19

B.     Cloudflare's Argument That The Board Allegedly Failed To Apply The Correct Legal Standard Is Wrong .......................... 25

      1.     The Board Correctly Applied The Governing Legal Standards ....................................................................... 28

      2.     There Is No Precedent Or Support For Applying The Sort Of Vague And Erroneous Standard For Which Cloudflare Is Advocating For The First Time On Appeal ............................................................ 33

      3.     Even If Cloudflare's Erroneous Standard Applied (It Does Not), The Record Does Not Support Cloudflare's Characterization Of The Petition's Error As Obvious ........................................................... 49

III.     THE BOARD DID NOT ABUSE ITS DISCRETION IN FINDING THAT THE ERROR IN THE PETITION WAS NOT A CORRECTABLE ERROR ................................................. 54

IV.     SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S DECISION THAT CLOUDFLARE FAILED TO PROVE CLAIMS 17, 18, 37, AND 38 OF THE '593 PATENT UNPATENTABLE BASED ON THE STATUTORY GROUND IDENTIFIED IN THE PETITION ....................................................................... 57

CONCLUSION ........................................................................... 58

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Federal Cases**

*A.F. Stoddard & Co. v. Dunn*,
 564 F.2d 556 (D.C. Cir. 1977) .................................................. 24, 39, 40, 41

*American Signature, Inc. v. United States*,
 598 F.3d 816 (Fed. Cir. 2010) ..................................................................... 41

*Apple Inc. v. MPH Techs. Oy*,
 2022 U.S. App. LEXIS 25173 (Fed. Cir. Sep. 8, 2022) ............... 30, 32, 35

*Biotec Biologische Naturverpackungen GmbH v. Biocorp, Inc.*,
 249 F.3d 1341 (Fed. Cir. 2001) ............................................................ 47, 48

*Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp, LLC*,
 879 F.3d 1332 (Fed. Cir. 2018) .................................................................... 38

*Helfgott & Karas, P.C. v. Dickinson*,
 209 F.3d 1328 (Fed. Cir. 2000) ..................................................... 42, 43, 44

*In re Bennett*,
 766 F.2d 524 (Fed. Cir. 1985) ............................................................ *passim*

*In re Gartside*,
 203 F.3d 1305 (Fed. Cir. 2000) ................................................................... 17

*In re Google Tech. Holdings LLC*,
 980 F.3d 858 (Fed. Cir. 2020) ............................................................. 18, 24

*In re Magnum Oil Tools Int'l, Ltd.*,
 829 F.3d 1364 (Fed. Cir. 2016) ..................................................... 26, 27, 28

*In re NuVasive, Inc.*,
 842 F.3d 1376 (Fed. Cir. 2016) ................................................................... 17

*In re Serenkin*,
 479 F.3d 1359 (Fed. Cir. 2007) ................................................................... 38

*In re Watts*,
 354 F.3d 1362 (Fed. Cir. 2004) ........................................................... 17, 18

*Intelligent Bio-Systems, Inc. v. Illumina Cambridge, Ltd.*,
821 F.3d 1359 (Fed. Cir. 2016) .................................................................. 54

*Intuitive Surgical, Inc. v. Ethicon LLC*,
25 F.4th 1035 (Fed. Cir. 2022) .................................................................. 26

*Koninklijke Philips N.V. v. Google LLC*,
948 F.3d 1330 (Fed. Cir. 2020) ........................................................... 30, 32

*Microsoft Corp. v. Biscotti, Inc.*,
878 F.3d 1052 (Fed. Cir. 2017) .................................................................. 16

*Microsoft Corp. v. FG SRC, LLC*,
860 F. App'x 708 (Fed. Cir. 2021) ..................................... 16, 30, 53, 55

*MModal LLC v. Nuance Communs., Inc.*,
846 F. App'x 900 (Fed. Cir. 2021) ........................................................... 17

*Novartis AG v. Torrent Pharm. Ltd.*,
853 F.3d 1316 (Fed. Cir. 2017) ................................................... 17, 18, 24

*PGS Geophysical AS v. Iancu*,
891 F.3d 1354 (Fed. Cir. 2018) ................................................... 26, 27, 28

*Q. I. Press Controls, B.V. v. Lee*,
752 F.3d 1371 (Fed. Cir. 2014) .................................................................. 18

*Redline Detection, LLC v. Star Envirotech, Inc.*,
811 F.3d 435 (Fed. Cir. 2015) ..................................................... 16, 17, 18

*Saint Regis Mohawk Tribe v. Mylan Pharm., Inc.*,
896 F.3d 1322 (Fed. Cir. 2018) ........................................................... 27, 39

*Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*,
948 F.3d 1342 (Fed. Cir. 2020) .................................................................. 38

*Samsung Elecs. Co. v. Infobridge Pte. Ltd.*,
929 F.3d 1363 (Fed. Cir. 2019) .................................................................. 18

*SAS Inst., Inc. v. Iancu*,
138 S. Ct. 1348 (2018) ........................................................................... 26, 28

*Sirona Dental Sys. GMBH v. Institut Straumann AG*,
  892 F.3d 1349 (Fed. Cir. 2018) ............................................................ 26, 28

*Superior Fireplace Co. v. Majestic Prods. Co.*,
  270 F.3d 1358 (Fed. Cir. 2001) ............................................................ 44, 45

**Federal Statutes**

35 U.S.C. § 102(e) ..................................................................................... 5, 8

35 U.S.C. § 103(a) ................................................................................... 12, 16

35 U.S.C. § 116 ............................................................................................. 40

35 U.S.C. § 251 ....................................................................................... 35, 36

35 U.S.C. § 255 ................................................................................. 44, 45, 46

35 U.S.C. § 311 ............................................................................................. 25

35 U.S.C. § 312 ....................................................................................... 25, 27

35 U.S.C. § 312(a) ................................................................................. *passim*

35 U.S.C. § 314 ............................................................................................. 25

**Regulations**

37 C.F.R. § 42.104 ....................................................................................... 46

37 C.F.R. § 42.104(b) ....................................................................... 25, 31, 34

37 C.F.R. § 42.104(c) ............................................................................. 27, 42

**Treaties**

PCT Rule 91.1 .......................................................................................... 43, 44

PCT Rule 91.1(b), ........................................................................................ 43

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Federal Circuit Rule 47.5(a)(1), counsel for Sable Networks, Inc. ("Sable") is unaware of any other appeal in or from the same *Inter Partes* Review ("IPR") proceedings in the United States Patent and Trademark Office Patent Trial and Appeal Board ("the Board") that was previously before this or any other appellate court.

Pursuant to Federal Circuit Rule 47.5(a)(2) and 47.5(b), counsel for Sable informs the Court that there are no cases known to counsel to be pending in this or any other tribunal that will directly affect or be directly affected by this Court's decision in the pending case.

The four claims of U.S. Patent No. 8,243,593 ("the '593 Patent") at issue in this appeal are not at issue or pending in any case pending before any Court other than this Court in this appeal.

## STATEMENT OF THE ISSUES

Sable disagrees with Cloudflare's Statement of the Issues, and restates the issues as follows:

1.    Whether this Court should consider Cloudflare's new and untimely argument—that the Board should have considered whether the error in the Petition for *Inter Partes* Review was obvious, as opposed to typographical or clerical—advanced for the first time on appeal where (a) it was not presented to or considered by the Board and (b) it is contrary to law and supported by no precedent.

2.    Whether the Board abused its discretion in determining that the error in the Petition was not a typographical or clerical error that could be corrected, but rather a substantive error that could not be corrected consisting of a complete failure to advance any argument that claims 17, 18, 37, and 38 of the '593 patent would have been obvious in view of Yung combined with Copeland.

3.    Whether substantial evidence supports the Board's decision that Cloudflare failed to prove claims 17, 18, 37, and 38 of the '593 patent unpatentable based on the sole statutory ground identified in the Petition.

## STATEMENT OF THE CASE

### I.    THE '593 PATENT

U.S. Patent No. 8,243,593 (the "'593 patent"), entitled *Mechanism for Identifying and Penalizing Misbehaving Flows in a Network*, was filed on December

22, 2004. Appx61-73. The original assignee was Caspian Networks, Inc. Dr. Lawrence G. Roberts—one of the founding fathers of the Internet, best known for his work as the Chief Scientist of the Advanced Research Projects Agency (ARPA) where he designed and oversaw the implementation of ARPANET, the precursor to the internet—founded Caspian Networks in 1998. At Caspian Networks, Dr. Roberts developed a new kind of internet router to efficiently route packets over a network, which was aimed at addressing concerns about network "gridlock." Further development work at Caspian led to, among other inventions, the patent-at-issue. In a 2001 interview with *Wired* Magazine, for example, Dr. Roberts discussed the router he was then developing at Caspian Networks—the Apeiro. He told *Wired*:

> the Apeiro will... create new revenue streams for the carriers by solving the 'voice and video problem.' IP voice and video, unlike email and static Web pages, breaks down dramatically if there's a delay - as little as a few milliseconds - in getting packets from host to recipient.

Appx3019. The Apeiro debuted in 2003.

Sable Networks, Inc. ("Sable"), the current assignee, was formed by Dr. Sang Hwa Lee to further develop and commercialize the flow-based networking technologies developed by Dr. Roberts and his team at Caspian Networks. The '593

3

patent is one of several Caspian Networks patents now assigned to Sable Networks, Inc.

The '593 patent discloses and claims novel methods and systems for processing a flow of a series of information packets on a single router. These technologies permit a single router to identify and control less desirable network traffic. Because the characteristics of data packets in undesirable network traffic can sometimes be disguised, the '593 patent improves the operation of computer networks by disclosing technologies that can pierce such a disguise by monitoring the characteristics of flows of data packets rather than ancillary factors such as port numbers or signatures.

The '593 patent is directed toward "a mechanism for effectively identifying and penalizing misbehaving information packet flows in a network. This mechanism may be applied to any type of network traffic including, but certainly not limited to, P2P traffic." Appx67, at 1:54-58. "Because misbehaving flows are identified based upon their observed behavior, and because their behavior cannot be hidden, misbehaving flows cannot avoid detection." Appx67, at 1:61-64.

The '593 patent discloses tracking the behavioral statistics of a flow of data packets that can be used to determine whether the flow is undesirable. "These behavioral statistics reflect the empirical behavior of the flow." Appx67, at 2:4-5. The behavioral statistics are updated as information packets belonging to the flow

4

are processed by a single router. Appx67, at 2:14-17. Based at least in part on the behavioral statistics, "a determination is made as to whether the flow is exhibiting undesirable behavior." Appx67, at 2:18-20. This determination is made by calculating a "badness factor" for each flow, which is computed based on the flow's behavioral characteristics. Appx67, at 2:21-23. "If the flow is exhibiting undesirable behavior, then a penalty may be enforced on the flow. … This penalty may be an increased drop rate." Appx67, at 2:28-31.

## II.    PROCEEDINGS BEFORE THE BOARD

### A.    The At-Issue IPR Petition

On May 7, 2021, Petitioners Cloudflare, Inc. ("Cloudflare") and Sonicwall Inc.[1] (sometimes referred to collectively as "Petitioners") filed a Petition for *Inter Partes* Review (IPR) of U.S. Patent No. 8,243,593 (the "Petition"). Appx74-181. The Petition challenged the claims of the '593 Patent based on four separate grounds. As relevant here, the Petition argued that under ground 1, "Claims 1, 2, 4-7, *17*, *18*, 25-27, *37*, and *38* Are Obvious over Yung.[2]" Appx104 (emphasis added). More specifically, for claims 17 and 37, the Petition argued: "For the reasons discussed above regarding claims 7 and 27, and because Yung's 'traffic monitoring module 75'

---

[1] Sonicwall was dismissed from the IPR proceeding prior to trial.

[2] U.S. Patent No. 7,664,048 to Yung et al., is entitled *Heuristic Behavior Pattern Matching of Data Flows in Enhanced Network Traffic Classification* ("Yung"). Yung is the primary cited reference, relied on under 35 U.S.C. § 102(e) with respect to all four grounds asserted in the Petition.

performs the same functions as the '593 Patent's 'processors,' Yung discloses claims 17 and 37." Appx129. For claims 18 and 38, the Petition argued: "For the reasons discussed above regarding claims 7 and 27, and because Yung's 'traffic monitoring module 75' performs the same functions as the '593 Patent's 'processors,' Yung discloses claims 18 and 38." Appx129-130. The Petition did not challenge claims 17, 18, 37, and 38 under any other ground.

To support the Petition's argument that claims 17, 18, 37, and 38 are allegedly obvious under ground 1 (Yung alone), Petitioners submitted an expert declaration from Dr. Kevin Jeffay ("Jeffay Declaration"). Appx1037-1179. With respect to claims 17 and 37, Dr. Jeffay opined: "For the reasons discussed above, and because Yung's 'traffic monitoring module 75' performs the same functions as the '593 patent's 'processors,' *it is my opinion that Yung discloses [17] and [37]*." Appx1138, at ¶ 194 (emphasis added). With respect to claims 18 and 38, Dr. Jeffay opined: "For the reasons discussed above, and because Yung's 'traffic monitoring module 75' performs the same functions as the '593 patent's 'processors,' *it is my opinion that Yung discloses [18] and [38]. Therefore, in my opinion, a POSA would have understood that Yung discloses [18] and [38]*." Appx1139, at ¶ 195 (emphasis added).

6

## B.    The Institution Decision

On November 29, 2021, the Board issued its Decision Granting Institution of *Inter Partes* Review.  Appx319-376.  As relevant here, in the Institution Decision, the Board stated: "Petitioner has not demonstrated a reasonable likelihood it would prevail in establishing the unpatentability of any of dependent claims 17, 18, 37, or 38 as obvious over Yung alone.   In particular, claims 17 and 18 both depend indirectly from independent claim 9, and claims 37 and 38 depend indirectly from independent claim 29.  Petitioner does not demonstrate that Yung teaches or suggests 'computing . . . a badness factor for the flow,' as required by claim 9, or 'means for computing . . . a badness factor for the flow,' as required by claim 29.   Thus, Petitioner does not demonstrate that Yung teaches or suggests all limitations of dependent claims 17, 18, 37, and 38."  Appx356-357 (citations omitted).

Although the Board's analysis could have stopped there, the Board went on to state: "[T]he inclusion of claims 17, 18, 37, and 38 in the Yung-only ground may be a typographical error. …  As a result, we question whether we should consider the Petition to include a contention that the subject matter of claims 17, 18, 37, and 38 would have been obvious over the combination of Yung and Copeland.[3]  We invite the parties to address this issue at trial."  Appx357.

---

[3] U.S. Patent No. 7,185,368 to Copeland, is entitled *Flow-Based Detection of Network Intrusions* ("Copeland").  Copeland is a secondary reference relied on in

### C.      Patent Owner's Response To The Petition

Sable filed its Patent Owner's Response to the Petition on March 14, 2022. Appx471-524.  As pertinent here, in responding to the Board's invitation to address whether the inclusion of claims 17, 18, 37, and 38 in ground 1 (Yung only) of the Petition may have been a typographical error, Sable explained: "In the Institution Decision, the Board correctly concluded that 'Petitioner has not demonstrated a reasonable likelihood it would prevail in establishing the unpatentability of any of dependent claims 17, 18, 37, or 38 as obvious over Yung alone.' … The Board was correct, and its analysis must and should end there.  Because Yung does not teach or suggest all limitations of dependent claims 17, 18, 37, or 38 of the '593 patent, and Yung is the only basis for ground 1 of the Petition, Petitioner has failed to carry its burden of proving by a preponderance of the evidence that dependent claims 17, 18, 37, and 38 are obvious in view of Yung."  Appx490-491 (citations omitted).

Citing apposite decisions of the Supreme Court and this Court, as well as on-point Board decisions, Sable further explained that "[d]espite the Petition's clear failure to prove the obviousness of claims 17, 18, 37, and 38 of the '593 patent in view of Yung, the Institution Decision continues on to speculate that perhaps 'the inclusion of claims 17, 18, 37, and 38 in the Yung-only ground may be a

---

combination with Yung as alleged prior art under 35 U.S.C. § 102(e) with respect to ground 2 in the Petition.

typographical error' even though there is no evidence of any such alleged error. …
Even if the Board were to conclude … that Petitioner intended to challenge claims
17, 18, 37, and 38 under ground 2, but inadvertently failed to state such anywhere in
the petition, this would be a clear example of a deficiency in the petition that the
Supreme Court, the Federal Circuit, and the Board have repeatedly made clear the
Board is not empowered to correct." Appx491-492 (citations omitted). *See also*
Appx492-493 (citing and explaining directly on-point authority).

### D.     Petitioner's Reply To Patent Owner's Response

Cloudflare filed its Reply to Patent Owner's Response on June 6, 2022.
Appx528-564. In response to the Institution Decision's query as to whether the
Petition's failure to challenge claims 17, 18, 37, and 38 under ground 2 (Yung and
Copeland) could have been a typographical error, Cloudflare argued: "In the
Institution Decision, the Board correctly noted a typographical error in the petition,
which inadvertently included the arguments addressing dependent claims 17, 18, 37,
and 38 under Ground 1 (Yung alone) rather than Ground 2 (Yung and Copeland)."
Appx559 (citation omitted). Cloudflare further asserted that "[c]ontrary to Patent
Owner's argument, the Board routinely relies on common sense and logic to
understand the contentions presented in a petition despite typographical errors."
Appx561-562 (citations omitted).

**E.    Patent Owner's Sur-Reply**

On July 5, 2022, Sable filed its Patent Owner's Sur-Reply.  Appx584-614.  As relevant here, Sable explained that "[i]n the Reply, Petitioners argue they made a 'typographical error in the petition, which inadvertently included the arguments addressing dependent claims 17, 18, 37, and 38 under Ground 1 (Yung alone) rather than Ground 2 (Yung and Copeland).'  There is no factual or legal support for Petitioners' argument.  This counterfactual assertion, based on a non-existent typographical error, was suggested as a possibility by the Board in the Institution Decision, and seized upon by Petitioners in the Reply. … [T]he Board could wonder aloud whether the Petitioner made a typographical error, but that is not evidence that there was, in fact, a typographical error, and the Board cannot find that there was such an error unless Petitioners shoulder their burden of proving that such an error occurred," which they did not.  Appx591-592 (citations omitted).

Sable also thoroughly distinguished the Board decisions relied on by Cloudflare in its Reply on the ground that those decisions involved typographical or clerical errors as opposed to the Petition's substantive failure to advance any argument that claims 17, 18, 37, and 38 would have been obvious in view of the Yung-Copeland combination.  Appx597-603.  In concluding its argument, Sable reiterated that "[t]he Petition must and should be taken at its word.  Claims 17, 18,

37, and 38 are challenged in ground 1 under Yung alone, and ground 1 fails as to those claims." Appx603.

### F.    Arguments At Oral Hearing

The Board held an oral hearing on September 7, 2022.  Appx636-694.  At the hearing, the Parties and Board addressed at length the question of whether the Petition's failure to advance any argument that claims 17, 18, 37, 38 would have been obvious in view of Yung and Copeland is a typographical or clerical error of the sort that could or should be corrected.

Cloudflare's counsel repeatedly argued that the error in the Petition is a typographical error that should be corrected.  As Cloudflare's counsel argued: "Let me move … through the last point, which is the typographical error.  …  [T]he point I wanted to make here is … that the Board is allowed to use logic and common sense to try to determine if there was a typographical error.  If there was, the Board can use logic and common sense to decide what we actually meant to contend, in our petition despite the error." Appx656.  *See also* Appx688.

In response, Sable's counsel pointed out that Petitioners "are missing a substantive argument, because they, knowing what Ground 1 was, took these claims [17, 18, 37, and 38], and whether through lack of diligence, lack of understanding correctly of what the disclosures are, they misunderstood" the at-issue claims.  Appx664.  *See also* Appx665 (Sable's counsel arguing, "[t]hey didn't forget Claims

11

17 and 18 and so forth.  They addressed it. . . .  They said, Yung's enough.  Yung is enough.").

### G.    The Final Written Decision

On October 18, 2022, the Board issued its Final Written Decision.  Appx1-48. In the Final Written Decision, the Board explained: "After institution, claims 1, 2, 4-8, 14-16, 25-28, and 34-36 of the '593 patent were statutorily disclaimed, so this Decision does not address the patentability of those claims.  Having considered the full record at trial, we determine that Petitioner has shown that claims 3, 9-13, 19-24, 29-33, and 39-44 of the '593 patent are unpatentable under 35 U.S.C. § 103(a), and we determine that Petitioner has not shown that claims 17, 18, 37, and 38 of the '593 patent are unpatentable."  Appx2.

Cloudflare does not appeal the Board's finding that claims 3, 9-13, 19-24, 29-33, and 39-44 of the '593 patent are unpatentable under 35 U.S.C. § 103(a). Cloudflare only appeals the Board's finding that Cloudflare failed to establish the unpatentability under 35 U.S.C. § 103(a) of claims 17, 18, 37, and 38; none of these claims are in active litigation against Cloudflare or any other litigant.

With respect to claims 17, 18, 37, and 38, the Board "decline[d] to read the Petition to include a contention that claims 17, 18, 37, and 38 would have been obvious in light of Yung and Copeland."  Appx35.  The Board "determined whether the Petition raised this contention because it is the Petition, not [the Board's]

12

discretion, that guides the proceeding." Appx35 n.22 (citations omitted).  The Board

explained that "[t]he Petition consistently contends that claims 17, 18, 37, and 38

would have been obvious in light of Yung alone. … Petitioner fails to identify (and

we do not perceive) *any* portion of the Petition that can be read as affirmatively

stating that these claims would have been obvious in light of Yung and Copeland.

Consequently, we do not agree with Petitioner's contention that the omission of

Copeland was a 'typographical error.'  The problem is not an isolated typographical

error (or two), but rather one that pervades the Petition."  Appx35-36 (emphasis in

original) (citations omitted).

Consequently, the Board correctly determined "that Petitioner has not shown,

by a preponderance of the evidence, that the subject matter of claims 17, 18, 37, or

38 would have been obvious over Yung."  Appx38.

### H.  Denial Of Request For Rehearing

On November 17, 2022, Petitioners filed a Request for Rehearing.  Appx695-

705.  Petitioners argued that the "Board misapprehended the fundamental difference

between" the Federal Circuit cases relied on by the Board in the Final Written

Decision "and this one."  Appx698.  According to Petitioners, "here, the Board is

asked to correct a typographical error that was first raised in the institution decision

and immediately acknowledged as such by Petitioners at the outset of the trial phase.

The correction—reading the paragraphs addressing claims 17, 18, 37 and 38 in the

13

Ground 2 portion of the petition—simply conforms the sequence of arguments to the only sensible reading of the petition based on common sense and black-letter patent law." Appx698-699.

On January 9, 2023, the Board soundly and correctly denied Petitioners' Request for Rehearing. Appx49-56. As the Panel explained, "we were not persuaded that the Petition contained a typographical error. We determined that the Petition repeatedly and expressly challenged claims 17, 18, 37, and 38 over Yung alone. Nothing in Petitioner's Request for Rehearing persuades us that that determination was in error." Appx53. *See also* Appx54.

## SUMMARY OF THE ARGUMENT

This Court should affirm the Board's Final Written Decision with respect to claims 17, 18, 37, and 38 of the '593 patent. As the Board noted, it is the Petition that guides an IPR proceeding. The Board then followed, as it should, the actual road map that Cloudflare provided and analyzed the sole reference—Yung—that Cloudflare chose for the statutory ground (ground 1) to analyze the alleged unpatentability of claims 17, 18, 37, and 38 of the '593 patent. Substantial, indeed undisputed, evidence supports the Board's finding that claims 17, 18, 37, and 38 would not have been obvious in view of Yung alone.

Cloudflare argues *for the first time on appeal* that the Board erred in considering only whether the error in the Petition was typographical or clerical.

14

According to Cloudflare, the Board has broad authority to correct allegedly obvious errors in petitions for *Inter Partes* Review even if those errors are not typographical or clerical.  Cloudflare never advanced such an argument in the proceedings before the Board.  To the contrary, Cloudflare repeatedly argued that the error in its Petition was typographical and thus correctable.  Because Cloudflare waived its primary argument on appeal by failing to present it to the Board, it should not be considered here.

Even if Cloudflare's primary argument on appeal had not been waived, it is wrong.  The Board applied the correct legal standards in analyzing the purported error in the Petition.  The amorphous standard for which Cloudflare argues for the first time on appeal is supported by zero precedent and in fact contravenes established precedent and decisions of this Court and the Board.  And even if Cloudflare's erroneous standard applied (it does not), the record does not support Cloudflare's characterization of the Petition's error as obvious.

Cloudflare's alternative argument that the Board supposedly abused its discretion in failing to find that the error in the Petition was a correctable clerical error likewise fails.  As the Board correctly explained, it was "faced with a Petition that did not include Copeland in the ground challenging claims 17, 18, 37, and 38, nor did it address Copeland in its substantive analysis of those dependent claims." Appx54.  Although "the pieces were there to make an argument," "the Petitioner

15

failed to put those pieces together." Appx54. The Board acted well within its discretion in declining to "put the pieces together on Petitioner's behalf." Appx54. *See also Microsoft Corp. v. FG SRC, LLC*, 860 F. App'x 708, 713 (Fed. Cir. 2021) ("It is not the Board's job to cobble together assertions from different sections of a petition . . . .").

For the foregoing reasons and those set forth herein, this Court should affirm the Board's finding in the Final Written Decision that Cloudflare failed to establish the unpatentability under 35 U.S.C. § 103(a) of claims 17, 18, 37, and 38 of the '593 patent.

## **ARGUMENT**

### I.    **STANDARD OF REVIEW**

The "general rule" in this Court "is that any argument not raised before the Board is waived on appeal." *Microsoft Corp. v. Biscotti, Inc.*, 878 F.3d 1052, 1075 (Fed. Cir. 2017) (citing *Redline Detection, LLC v. Star Envirotech, Inc.*, 811 F.3d 435, 450 (Fed. Cir. 2015)). As the Court has explained, "[i]n appeals from the Board, 'we have before us a comprehensive record that contains the arguments and evidence presented by the parties and our review of the Board's decision is confined to the

four corners of that record.'"  *Novartis AG v. Torrent Pharm. Ltd.*, 853 F.3d 1316, 1329 (Fed. Cir. 2017) (quoting *In re Watts*, 354 F.3d 1362, 1367 (Fed. Cir. 2004)).

"The determination of whether the petition has sufficiently made an argument amounts to a determination of compliance with procedural requirements, a matter generally reviewed for abuse of discretion."  *MModal LLC v. Nuance Commc'ns, Inc.*, 846 F. App'x 900, 906 (Fed. Cir. 2021) (citation omitted).

And this Court "review[s] the PTAB's factual findings for substantial evidence and its legal conclusions *de novo*."  *Redline Detection, LLC*, 811 F.3d at 449 (citation omitted).  While obviousness is ultimately a question of law, it is based on underlying findings of fact.  *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000).  As relevant here, the Board's findings regarding "the scope and content of the prior art" are reviewed for substantial evidence.  *Id.* at 1319 (internal quotation omitted).  "Substantial evidence is something less than the weight of the evidence but more than a mere scintilla of evidence.  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *In re NuVasive, Inc.*, 842 F.3d 1376, 1379-80 (Fed. Cir. 2016) (internal citations and quotations omitted).

17

II.  **CLOUDFLARE WAIVED ITS NEW AND ERRONEOUS ARGUMENT THAT THE ERROR IN THE PETITION WAS ALLEGEDLY OBVIOUS AND CORRECTABLE UNDER SOME VAGUE AUTHORITY SUPPOSEDLY POSSESSED BY THE BOARD**

"[A] party waives an argument that it 'failed to present to the Board' because it deprives the court of 'the benefit of the Board's informed judgment.'" *Novartis AG*, 853 F.3d at 1329 (quoting *In Re Watts*, 354 F.3d at 1367-68).  *See also Samsung Elecs. Co. v. Infobridge Pte. Ltd.*, 929 F.3d 1363, 1370 (Fed. Cir. 2019) (argument not presented to the Board waived on appeal); *Redline Detection, LLC*, 811 F.3d at 450 ("The PTAB noted Redline argued for a different PHOSITA standard, but 'provide[d] no persuasive alternative.'  Now on appeal, Redline is arguing for the application of a different PHOSITA standard.  …  We hold Redline's arguments waived and need not address them."); *Q. I. Press Controls, B.V. v. Lee*, 752 F.3d 1371, 1382 (Fed. Cir. 2014) ("[W]e agree with Quad/Tech that the argument was not presented before the Board and is thus waived.").  Therefore, this Court has "regularly stated and applied the important principle that a position not presented in the tribunal under review will not be considered on appeal in the absence of exceptional circumstances." *In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020) (citations omitted).

18

**A.      Cloudflare Never Presented Its Argument Regarding The Board's Supposed Power To Correct Obvious, But Not Typographical Or Clerical, Errors To The Board**

Although somewhat garbled, Cloudflare's primary argument on appeal appears to be that "the Board has the power to correct ***obvious errors*** in a petition after considering whether it is fair to do so under the circumstances (such as considering notice and prejudice). … Here, in determining whether to allow Cloudflare's motion to correct, ***the Board considered only whether Cloudflare's error was 'typographical.'*** … The ***Board's failure to consider whether Cloudflare's error was obvious*** or otherwise correctable, is an error of law." Appellant's Opening Brief ("AOB"), at 29-30 (citations omitted) (emphasis added). The problem for Cloudflare is that it never argued to the Board that the alleged standard it is advocating for here, which supposedly applies to "obvious or otherwise correctable," but not typographical or clerical, errors in an IPR petition, should have been applied by the Board.  To the contrary, in the proceedings before the Board, Cloudflare repeatedly argued (unsuccessfully) that there was a "***typographical error*** in the petition, which inadvertently included the arguments addressing dependent claims 17, 18, 37, and 38 under Ground 1 (Yung alone) rather than Ground 2 (Yung and Copeland)." Appx559 (emphasis added). *See also* Appx561 (arguing that "the Board routinely relies on common sense and logic to understand the contentions

presented in a petition despite *typographical errors*.") (citations omitted) (emphasis added).

The entirety of Cloudflare's argument in its Reply to Patent Owner's Response regarding the only issue subject to this appeal was that its failure to include dependent claims 17, 18, 37, and 38 under ground 2 (Yung and Copeland) of the Petition was the result of an inadvertent typographical error. Appx559-562. In response to Sable's argument—which the Board ultimately and correctly agreed with—that Cloudflare's error was not typographical but rather substantive such that any correction by the Board would amount to an impermissible rewriting of the Petition, Cloudflare argued that "[c]ontrary to Patent Owner's argument, the Board routinely relies on common sense and logic to understand the contentions presented in a petition *despite typographical errors*." Appx561 (emphasis added). To support its argument, Cloudflare cited five Board decisions, all of which are distinguishable from this case, in which the Board permitted typographical or clerical errors in petitions to be corrected. Appx561-56.

At oral argument, Cloudflare doubled down on its argument. Cloudflare's counsel represented: "Let me move … through the last point, which is the *typographical error*. … [T]he point I wanted to make here is … that the Board is allowed to use logic and common sense *to try to determine if there was a typographical error*. *If there was*, the Board can use logic and common sense to

decide what we actually meant to contend, in our petition despite the error." Appx656 (emphasis added). And in response to questions asked by the Board, Cloudflare's counsel referred the Board to the decisions cited in Cloudflare's Reply to Patent Owner's Response "where the Board found ***typographical errors***, and sort of tried to divine what the petition was intended to say. … They simply, in those decisions, each one of them, they look at the petition. They say, oh, based on what I see in the petition, there's an inconsistency. That tells me there's ***a typo***. And I'm going to, you know, apply logic, and I'm going to apply common sense. And understand the petition as it clearly was intended, despite this ***typographical error***." Appx658 (emphasis added). In other words, the only position and argument Cloudflare advanced was that the Petition's failure to include dependent claims 17, 18, 37, and 38 under ground 2 (Yung and Copeland) was the result of a ***typographical error*** of the sort that could be corrected by the Board.

In its Final Written Decision, the Board found nothing that even came close to a typographical error, or any error that was reasoned: "Petitioner fails to identify (and we do not perceive) *any* portion of the Petition that can be read as affirmatively stating that these claims would have been obvious in light of Yung and Copeland. Consequently, we do not agree with Petitioner's contention that the omission of Copeland was a 'typographical error.' The problem is not an isolated typographical

21

error (or two), but rather one that pervades the Petition." Appx35-36 (citations omitted) (emphasis in original).

Cloudflare then filed a Request for Rehearing in which it challenged the Board's decision declining to consider whether dependent claims 17, 18, 37, and 38 would have been obvious under ground 2 (Yung and Copeland) given that the Petition only included these dependent claims under ground 1 (Yung alone). Appx695-705. In its Request for Rehearing, Cloudflare repeated its prior arguments to the Board, arguing that "Petitioners do not ask the Board to change the petition to create a new ground—they ask ***only*** that the Board resolve an obvious and admitted ***typographical error*** that placed two paragraphs in the wrong section of the petition." Appx700 (emphasis added). *See also* Appx702-703 (arguing that "[t]he ***typographical error*** in the petition … positioned the argument for claim 17 in the petition on a page preceding the argument for claim 12, when it should have followed and built on the argument addressing claim 12. … The Board need only read the arguments recited in the petition in a logical and legally sensible way that resolves a clear and admitted ***typographical error***.") (emphasis added).

The record thus establishes that Cloudflare's only argument to the Board, regarding the issue now on appeal, was that the inclusion of dependent claims 17, 18, 37, and 38 under ground 1 (Yung alone) instead of ground 2 (Yung and Copeland)

22

of the Petition was a "clear and admitted ***typographical error***" (emphasis added) of the sort that could and should be corrected by the Board.

Now, on appeal, Cloudflare argues that "in determining whether to allow Cloudflare's motion to correct, the Board considered only whether Cloudflare's error was 'typographical.' But the Board's power to correct is not cabined by any statute … that limits correctable errors to typographical errors. The Board's failure to consider whether Cloudflare's error was obvious or otherwise correctable is an error of law." AOB, at 30 (citations omitted). *See also* AOB, at 33 (arguing on appeal that "the Board did not use the correct legal standard to analyze whether to correct Cloudflare's error" because it "considered only if the error was 'typographical.'"). In other words, Cloudflare faults the Board for focusing its analysis on whether the Petition contained a typographical error of the sort that could be corrected, and supposedly erring by not instead analyzing, under some other standard that Cloudflare never argued for or articulated to the Board, whether the Petition contained an obvious, but not typographical or clerical, error that was subject to correction. Because Cloudflare never made such an argument to the Board, but in fact argued its Petition contained a typographical error, its argument on appeal has been waived and should not be considered by this Court.

To put an even finer point on it, on appeal, Cloudflare argues the Board's purported authority, which it supposedly erred in failing to exercise, to correct

obvious, but not typographical or clerical, errors in IPR petitions stems principally from two decisions which predate the creation of *Inter Partes* Review by decades— *In re Bennett*, 766 F.2d 524 (Fed. Cir. 1985) (en banc), and *A.F. Stoddard & Co. v. Dunn*, 564 F.2d 556 (D.C. Cir. 1977). AOB, at 26-29. Neither of these supposedly controlling cases were cited or mentioned anywhere in the record of the proceedings before the Board. It defies logic and law for Cloudflare to predicate its appellate argument on a supposed controlling legal standard and cases (1) it never even mentioned in the proceedings before the Board, and (2) that predate the statute creating the administrative proceeding giving rise to this appeal.

Accordingly, Cloudflare has waived the primary argument it advances in this Court because it failed to present it to the Board, and this Court's "review of the Board's decision is confined to the four corners of that record.'" *Novartis AG*, 853 F.3d at 1329. Because there are "no exceptional circumstances justifying a departure from that principle here," the Court need not even address Cloudflare's new (and primary) argument on appeal that the Board allegedly failed to apply the correct legal standard in evaluating the at-issue error in Cloudflare's Petition. *See Google Tech. Holdings LLC*, 980 F.3d at 863.

## B.     Cloudflare's Argument That The Board Allegedly Failed To Apply The Correct Legal Standard Is Wrong

Cloudflare has waived its argument that the Board allegedly failed to apply the correct legal standard in evaluating the alleged obvious,[4] but not typographical or clerical, error in the Petition.  Regardless, even if the Court were to consider Cloudflare's waived argument (it should not), the Board applied the correct legal standard, and this Court should affirm.

An *Inter Partes* Review proceeding begins with the filing of a petition.  35 U.S.C. §§ 311, 312, 314.  Under 35 U.S.C § 312(a), "[a] *petition filed under section 311 may be considered only if*" it meets certain conditions.  35 U.S.C. § 312(a) (emphasis added).  Under § 312(a)(3), the petition must "identif[y], in writing and with particularity, each claim challenged, the grounds on which the challenge to each claim is based, and the evidence that supports the grounds for the challenge to each claim."  35 U.S.C. § 312(a)(3).  *See also* 37 C.F.R. § 42.104(b) (requiring petitioner to identify "the patents or printed publications relied upon for each ground" and

---

[4] Although Cloudflare also refers to so-called "errors raised *sua sponte*," (*see* AOB, at 6, 28), it focuses its arguments on whether supposedly obvious errors, that are not typographical or clerical, are correctable.  That makes sense because it should not matter whether the Board *sua sponte* raises a question as to whether a petition contains an error.  It either contains an error or it does not.  If the error is the sort of error that is not correctable, as in this case, the fact that the Board (as opposed to the petitioner) was the first to raise a question regarding the error is irrelevant.

"where each element of the claim is found in the prior art patents or printed publications relied upon").

In light of this statutory framework, the Supreme Court has held, "in an *inter partes* review the petitioner is master of its complaint and normally entitled to judgment on … the claims it raises …." *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1355, 200 L. Ed. 2d 695 (2018). Similarly, this Court consistently has held that the "petitioner's petition … is supposed to guide the life of the litigation," and the "petitioner's contentions ... define the scope of the litigation all the way from institution through to conclusion." *PGS Geophysical AS v. Iancu*, 891 F.3d 1354, 1360 (Fed. Cir. 2018). *See also Intuitive Surgical, Inc. v. Ethicon LLC*, 25 F.4th 1035, 1041 (Fed. Cir. 2022) ("[A]s the master of its own petition, Intuitive could have made its challenges more pointed and specific" but failed to do so).

Accordingly, in *In re Magnum Oil Tools International, Ltd.*, 829 F.3d 1364, 1380 (Fed. Cir. 2016), this Court found the Board erred in making an obviousness argument on behalf of the petitioner that could have been, but was not, made in the petition. The Court concluded there is no support for the argument that "the Board is free to adopt arguments on behalf of petitioners that could have been, but were not, raised by the petitioner during an IPR." *Id.* at 1381. *See also Sirona Dental Sys. GMBH v. Institut Straumann AG*, 892 F.3d 1349, 1356 (Fed. Cir. 2018) ("It would … not be proper for the Board to deviate from the grounds in the petition and

26

raise its own obviousness theory," "institut[ing] a *different* inter partes review of [its] own design") (emphasis in original)).

Although the statutory framework governing petitions for *Inter Partes* Review expressly provides that "[a] petition filed under section 311 may be considered only if," when filed, it meets the statutory requirements set forth in 35 U.S.C. § 312, a petitioner may file a motion "that seeks to correct a clerical or typographical mistake in the petition. The grant of such a motion does not change the filing date of the petition." 37 C.F.R. § 42.104(c). Thus, although as-filed petitions and contentions therein "guide the life of the litigation," such that the Board cannot "adopt arguments on behalf of petitioners that could have been, but were not, raised" in their petitions, the Board, on motion, can correct "clerical or typographical mistake[s]" in the petitions. *See PGS Geophysical AS*, 891 F.3d at 1360; *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d at 1381; 37 C.F.R. § 42.104(c). This Court therefore has recognized that "the Board has determined that in IPR a ***petitioner may only make clerical or typographical corrections to its petition***." *Saint Regis Mohawk Tribe v. Mylan Pharm., Inc.*, 896 F.3d 1322, 1328 (Fed. Cir. 2018) (citations omitted) (emphasis added). The Appellant's Brief fails to mention, let alone address, that decision, among others.

27

### 1. The Board Correctly Applied The Governing Legal Standards

The Board correctly applied these governing standards in determining whether to permit the Petition to be corrected, and the Final Written Decision makes clear the Board correctly understood and applied the rules and law and was not laboring under any misunderstanding of the issues concerning whether there was an error in the Petition that it should correct. Appx35-38. The Board properly framed the analysis as follows: "We determine whether the Petition raised this contention [that claims 17, 18, 37, and 38 would have been obvious in light of Yung and Copeland] because it is the Petition, not our discretion, that guides the proceeding." Appx35 n.22 (citing *Sirona Dental Sys. GMBH*, 892 F.3d at 1356 ("It would … not be proper for the Board to deviate from the grounds in the petition and raise its own obviousness theory …."); *PGS Geophysical AS*, 891 F.3d at 1360 (The "petitioner's contentions … define the scope of the litigation all the way from institution through to conclusion." (quoting *SAS Institute, Inc.*, 138 S. Ct. at 1357)); *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d at 1381 ("[T]he Board must base its decision on arguments that were advanced by a party, and to which the opposing party was given a chance to respond.")). At the same time, the Board appropriately recognized that although it could not "add contentions to a petition," it could "use 'common sense and logic to understand the contentions presented in a petition despite typographical errors' …." Appx. 35, fn. 22.

28

Applying these standards, in its Final Written Decision, the Board correctly "decline[d] to read the Petition to include a contention that claims 17, 18, 37, and 38 would have been obvious in light of Yung and Copeland." Appx35. As the Board explained: "The Petition consistently contends that claims 17, 18, 37, and 38 would have been obvious in light of Yung alone. The summary table includes these claims in the Yung-only ground; the organizational structure includes these claims in that ground; and the substantive discussion of the claims refers to Yung and to other claims included in the Yung-only ground." Appx35 (internal citations to Petition omitted). The Board thus found that Cloudflare "fail[ed] to identify … *any* portion of the Petition that can be read as affirmatively stating that these claims would have been obvious in light of Yung and Copeland." Appx35-36 (emphasis in original). Therefore, the Board did "not agree with Petitioner's contention that the omission of Copeland was a 'typographical error.'" Appx36. To the contrary, the Board correctly concluded that the "problem is not an isolated typographical error (or two), but rather one that pervades the Petition. … Ultimately, the Petition never expressly contends that these claims would have been obvious in light of the combination of Yung and Copeland, so we decline to interpret the Petition as including such a contention." Appx36.

In short, the Board applied the proper standards, and in doing so correctly determined that the error in the Petition was not a typographical error of the sort that

could be corrected, but rather was a substantive failure to advance any argument that claims 17, 18, 37, and 38 would have been obvious in light of Yung and Copeland. And the law is clear that the Board was not free to correct such a substantive error on behalf of Cloudflare.[5]

To support this conclusion in the Final Written Decision, the Board particularly relied on two decisions of this Court that it found "instructive." Appx36. The Board relied on *Koninklijke Philips N.V. v. Google LLC*, 948 F.3d 1330, 1334, 1336 (Fed. Cir. 2020), where this Court found that the Board erred in instituting *Inter Partes* Review on the ground that challenged claims "would have been obvious over SMIL 1.0 and Hua based on the arguments and evidence presented in the [p]etition" even though the petitioner "did not advance [a combination of SMIL 1.0 and Hua] in its petition." Appx37.

The Board also relied on this Court's non-precedential decision in *Apple Inc. v. MPH Techs. Oy*, 2022 U.S. App. LEXIS 25173 (Fed. Cir. Sep. 8, 2022). Appx37-

---

[5] Because the Board applied the correct standards in analyzing the Petition's error and ultimately concluding the purported error is a substantive one consisting of a complete failure to raise any argument that claims 17, 18, 37, and 38 would have been obvious in view of Yung and Copeland, this Court need not, and should not, consider whether claims 17, 18, 37, and 38 would have been obvious in view of Yung and Copeland. *See Microsoft Corp.*, 860 F. App'x at 713 ("Because we conclude that the Board did not err in failing to address claim 18 based on Obelix and Skillen [where the petition did not address claim 18 based on that combination of references], we need not consider whether claim 18 would have been obvious based on its similarity to claims 2 and 3.").

38.   In *Apple*, this Court affirmed the Board's finding that Apple failed to meet its burden to establish the unpatentability of dependent claims 6-8 of the at-issue patent because "Grounds 1 and 3 in IPR 2019-00820 did not address the intervening limitations of claim 5, from which claims 6-8 depend." *Id.* at *7-8. "The Board accepted that the combination of Ishiyama and Murakawa rendered claim 1 of the '581 patent obvious. The Board further accepted that adding Ahonen to that combination taught the additional limitation of dependent claim 5 …. Because Apple did not include Ahonen in Ground 1 addressing claims 6 and 7 or Ground 3 addressing claim 8, the Board held that Apple did not carry its burden as to those claims." *Id.* In affirming this portion of the Board's decision, this Court explained: "[W]e agree the Board properly declined to consider Ahonen in Grounds 1 and 3 of the '581 patent's IPR. Apple only raised Ahonen in Ground 2, which challenged claims 3 and 5 of the '581 patent. Even though claims 6-8 depend from claim 5, Apple did not include Ahonen in Grounds 1 and 3 challenging those claims, nor did it address or reference Ahonen in its substantive analysis. The Board did not err by declining to consider arguments that Apple did not make." *Id.* at *18-20. The Court explained that its "holding is consistent with the statutory framework that requires a petition to identify 'the grounds on which the challenge to each claim is based.'" *Id.* at *17-18 (citing 35 U.S.C. § 312(a)(3); 37 C.F.R. § 42.104(b)). The Court should affirm the Board's correct interpretation of the Petition in this case as well.

31

The Board's reliance on *Koninklijke Philips N.V.* and *Apple* was appropriate, as both of those cases involved analogous situations where the Board could not correct substantive errors in petitions for *Inter Partes* Review because doing so would be tantamount to the Board supplying grounds for challenging claims that were not identified in the petitions as filed. The Board thus correctly found that "[t]he instant proceeding includes the same factual scenario [as *Apple*]. The Petition alleges that independent claims 9 and 29 would have been obvious over two references (Yung and Copeland), but the Petition contends that some of their dependent claims (claims 17, 18, 37, and 38) would have been obvious over only one of those references (Yung). We decline to evaluate a combination of references that was not advanced in the Petition …." Appx38.

Subsequently, in its Decision denying Cloudflare's Request on Rehearing of Final Written Decision, the Board again applied the correct standards and reached the same correct conclusion it had reached in the Final Written Decision. Appx49-54. The Board reaffirmed that it was "not persuaded that the Petition contained a typographical error" because it properly "determined that the Petition repeatedly and expressly challenged claims 17, 18, 37, and 38 over Yung alone." Appx52-53. The Board further explained: "Here, [as in *Apple*], we were similarly faced with a Petition that did not include Copeland in the ground challenging claims 17, 18, 37, and 38, nor did it address Copeland in its substantive analysis of those dependent claims. In

both *Apple* and the instant case, the pieces were there to make an argument, but the Petitioner failed to put those pieces together.  Petitioner's arguments on rehearing do not convince us of error in our decision to not put the pieces together on Petitioner's behalf." Appx54.

Accordingly, the Board applied the correct standards, consistent with the statutory framework that requires a petition to identify "the grounds on which the challenge to each claim is based.'" 35 U.S.C. § 312(a)(3).  Because the error in Cloudflare's Petition was not a typographical error, but rather a substantive error consisting of a failure to include any argument that dependent claims 17, 18, 37, and 38 would have been obvious in view of Yung and Copeland, the Board properly declined to correct the Petition to advance an argument that Cloudflare could have advanced but did not advance.  In fact, Cloudflare itself acknowledges that the "***Board's decision here is no outlier*** …. The Board allows corrections of typographical and clerical errors, but refuses correction of … 'substantive' errors, or errors of 'magnitude.'" Appx31 (citing Board decisions) (emphasis added). Therefore, this Court should affirm the Board's finding.

## 2. There Is No Precedent Or Support For Applying The Sort Of Vague And Erroneous Standard For Which Cloudflare Is Advocating For The First Time On Appeal

The standard for which Cloudflare is advocating here appears, so far as Cloudflare's brief reveals, to have been spun from whole cloth.  There is no basis for

applying Cloudflare's manufactured standard here. Cloudflare argues that the "IPR statutory scheme … does not address or limit the Board's powers to correct obvious errors in an IPR petition. The Board's implementing regulations recognize a limited power to correct a petition's 'clerical or typographical mistake[s]' on motion, but do not otherwise address the Board's power to correct errors raised *sua sponte* or to correct obvious errors. Absent a limiting statute, the Board has broad, implicit authority to correct errors in IPR petitions." AOB, at 28 (internal citation omitted).

Cloudflare's argument fails at the outset because it contravenes the statutory framework discussed above providing that a petition for *Inter Partes* Review "may be considered only if" it "identifies, in writing and with particularity, each claim challenged, the grounds on which the challenge to each claim is based, and the evidence that supports the grounds for the challenge to each claim." 35 U.S.C. § 312(a)(3). *See also* 37 C.F.R. § 42.104(b) (requiring petitioner to identify "the patents or printed publications relied upon for each ground" and "where each element of the claim is found in the prior art patents or printed publications relied upon"). There is no dispute that the error in the Petition consisted of a failure to argue that dependent claims 17, 18, 37, and 38 are obvious under ground 2 in view of Yung and Copeland. To hold that the Board has the inherent authority to correct the Petition by inserting an argument that dependent claims 17, 18, 37, and 38 are obvious under ground 2 in view of Yung and Copeland would violate the statutory

34

mandate that, when filed, a petition must identify "the grounds on which the challenge to each claim is based." 35 U.S.C. § 312(a)(3); *see also Apple Inc.*, 2022 U.S. App. LEXIS 25173, at *17-18.

In any event, Cloudflare's argument also fails because it is not supported by any applicable precedent. Cloudflare primarily relies on *In re Bennett*, 766 F.2d 524 (Fed. Cir. 1985). *See* AOB, at 22, 26-30. In *In re Bennett*, a case decided decades before the creation of *Inter Partes* Review, the issue presented was whether the Board erred in refusing to allow the patent owner "to correct the ***defective execution*** of the reissue application which was filed within the two year period" prescribed by U.S.C. § 251, the statute governing the reissue of defective patents. *Id.* at 528 (emphasis added). Put another way, the "sole question [wa]s whether the ***defective execution of the timely filed reissue application*** may be corrected after those two years had passed." *Id.* at 526 (emphasis added). The timely filed reissue application was executed defectively where "the request for reissue was signed only by an officer of the patent owner, and not also by Mr. Bennett," the inventor. *Id.* Because the reissue application contained broadened claims, "it was required to be signed by the inventor in accordance with 35 U.S.C. § 251." *Id.* at 525. Although the inventor submitted a declaration seeking to correct the signature error and the Examiner accepted it, the Board reversed, "stating that the application as filed failed to comply

35

with the requirements of 35 U.S.C. § 251, and that the matter was not correctable …." *Id.*

This Court found that the Board erred. Although the Board cited "the absence of statutory authorization to the PTO to correct the defect," the Court held "that the patent statute and judicial precedent require[d] a contrary result" under the specific circumstances present in that case. *Id.* at 526. The Court noted that "[s]everal provisions of the patent law enable correction of errors, ***to avoid jeopardizing a patent-seeker's rights and interest***." *Id.* (emphasis added). The Court focused on the fact that the "legislative history of this section attests that Congress had in mind the dangers that overly-rigid bureaucratic practices could and did pose for ***patent applicants***." *Id.* (emphasis added). The Court thus ruled that Section 251 reissue proceedings are not insulated from those provisions of the Patent Act that enable patentees to correct a variety of ***procedural errors*** in how documents are signed, and how inventors are listed on documents. *Id.* at 527-28. In reaching this conclusion, the Court pointed out that Section 26 of the Patent Act allows for provisional acceptance of defectively executed documents and that Sections 116 and 256 provide for amendments to correct errors in inventorship. *Id.* at 526-28. In addition, the Court discussed the remedial nature of Section 251 and the principles of equity and fairness behind it. As the Court explained, the purpose of the reissue statute is to "remedy errors," and remedying a procedural error consisting of the failure of an

inventor to sign a reissue application would serve the "***constitutional objective of granting a patent (or a reissue patent)*** to the true inventor …." *Id.* at 527, 528 (emphasis added).

Cloudflare wrongly argues that as with "reissue applications (*Bennett*), IPR petitions sometimes include errors, despite petitioners' best efforts," and under *In re Bennett*, "[i]n determining whether to correct such errors, the Board must exercise its discretion, balancing the need for consistency with the interest of fairness and avoiding unjust results." AOB, at 29 (citing *In re Bennett*, 766 F.2d at 527). But in fact, the Office, and Director, have complete discretion whether to grant review in IPR, even where the statutory minimum thresholds for granting IPR are met. Cloudflare further wrongly argues that under *In re Bennett*, "the Board has the power to correct obvious errors in a petition after considering whether it is fair to do so under the circumstances (such as considering notice and prejudice)." AOB, at 29 (citing *In re Bennett*, 766 F.2d at 527). To start, *In re Bennett* involved a procedural error in an application for a reissue patent; there is no authority, and Cloudflare cites none, for applying statutory provisions governing the reissue of defective patents in the context of a proceeding for *Inter Partes* Review.[6]

---

[6] Although Cloudflare's argument is less than clear, elsewhere in its Brief, it appears to in fact concede this point, arguing that "[t]he Board cannot carry over those statutory limits [*e.g.*, from the statute governing the reissue of patents] to a separate context (IPRs) through regulation." AOB, at 33.

Moreover, even if *In re Bennett* applied (it does not), the only type of error addressed in *In re Bennett* was a procedural error—"the **defective execution**" of a timely filed reissue application. *In re Bennett*, 766 F.2d at 526 (emphasis added). There is nothing in *In re Bennett* addressing whether the sort of purportedly obvious substantive error that Cloudflare claims occurred in its Petition is correctable.[7]

Finally, the principles of equity and fairness relied on by the *In re Bennett* Court do not apply here. The *In re Bennett* Court recognized the inequity and unfairness of "jeopardizing **a patent-seeker's rights and interest**" by allowing a procedural error, *i.e.*, including the wrong signature, in a reissue application to defeat the entire purpose of the reissue statute—to remedy errors in issued patents. *Id.* at 526-528 (emphasis added). In contrast, *Inter Partes* Review, which was created in 2011 pursuant to the Leahy-Smith America Invents Act, allows patent challengers "to participate in the process of re-evaluating patents, but it also sets limits on the process." *Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*, 948 F.3d 1342, 1345 (Fed. Cir. 2020). This makes sense, given that the petitioners in *Inter Partes* Review proceedings are challenging already duly issued patents. *See, e.g.*, *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp, LLC*, 879 F.3d 1332, 1341 (Fed. Cir. 2018)

---

[7] Cloudflare also cites *In re Serenkin*, 479 F.3d 1359 (Fed. Cir. 2007). AOB, at 25. *In re Serenkin*, another case involving the patent reissue statute, makes clear that the "reissue statute 'was not enacted for the purpose of correcting errors of judgment.'" *Id.* at 1364 (citation omitted).

38

("[B]y statute a patent is valid upon issuance and included within the presumption of validity is a presumption of non-obviousness.") (internal quotation marks and citation omitted). In other words, the principles of equity and fairness relied on by the *In re Bennett* Court, which protect a ***patent owner and/or applicant*** from "the dangers that overly-rigid bureaucratic practices could and did pose for" them, (*In re Bennett*, 766 F.2d at 526), simply do not apply to protect a ***petitioner seeking to take away a patent owner's rights*** from the petitioner's own substantive mistakes. Indeed, even if the statutory minimum threshold for IPR is met, the petitioner never has the right for such review to occur: the Director always has complete discretion to deny review. *See St. Regis Mohawk Tribe*, 896 F.3d at 1327 ("If the Director decides not to institute, for whatever reason, there is no review. In making this decision, the Director has complete discretion to decide not to institute review.")

In addition to the distinguishable case of *In re Bennett*, Cloudflare also relies heavily on *A.F. Stoddard & Co. v. Dann*, 564 F.2d 556 (D.C. Cir. 1977), to support its incorrect argument that "the Board has the power to correct obvious errors in a petition after considering whether it is fair to do so under the circumstances (such as considering notice and prejudice). AOB, at 27-29. The sole question presented in *A. F. Stoddard & Co.* was: "[i]f, *through innocent error*, W was named as the inventor in a patent application and it is later discovered that H was the true inventor, can the error be corrected by diligent action upon its discovery?" *A. F. Stoddard &*

*Co.*, 564 F.2d at 558 (emphasis in original). The patent examiner rejected the at-issue "continuation and reissue applications on the ground that the inventorship corrections requested could not be made under 35 U.S.C. § 116," the governing statute regarding inventorship, as it existed at the time. *Id.* at 559. In reaching the opposite conclusion, the *A. F. Stoddard & Co.* court was guided by the following constitutional objective: "To promote the Progress of … useful Arts, by securing for limited Times to … Inventors the exclusive Right to their … Discoveries." *Id.* at 562. As the court explained, "the constitutional objective of *granting* a patent (or a reissue patent) to the true inventor will be, and can only be, served by permitting the requested correction." *Id.* (emphasis in original). Although the court did not fault the PTO for declining to "step[] beyond the bounds of the statutes by which it is governed," the court determined it was required to "delve within the interstices of a statute to do justice, not only to the individual or individuals involved, but to the statutory scheme itself." *Id.* at 566. This was particularly so given that the statutory scheme already provided for correction of innocent errors regarding the naming of inventive entities. *Id.* The *A. F. Stoddard & Co.* court's holding ultimately was codified in a 1982 amendment to 35 U.S.C. § 116. *See In re Bennett*, 766 F.2d at 528.

Like *In re Bennett*, *A. F. Stoddard & Co.*, a case decided decades before the creation of *Inter Partes* Review, has nothing to do with whether supposedly obvious

40

substantive (not typographical or clerical) errors in petitions for *Inter Partes* Review are correctable. The sole issue presented in *A. F. Stoddard & Co.* was whether an innocent procedural error—naming the wrong sole inventor in a patent application— could be corrected. In answering that question in the affirmative, the court was guided by the constitutional objective of "*granting* a patent (or a reissue patent) to the true inventor." *A. F. Stoddard & Co.*, 564 F.2d at 562. As with *In re Bennett*, the guiding principles in *A. F. Stoddard & Co.* are aimed toward protecting the rights of patent applicants and patents owners, not those seeking to take away the rights of patent applicants and patent owners. In short, there is nothing in *A. F. Stoddard & Co.* to support the creation of a broad standard of the sort Cloudflare advocates for here that would provide a leg-up for petitioners in *Inter Partes* Review proceedings seeking to invalidate duly issued patents by authorizing the Board to correct any purported error in a petition.

Cloudflare's other cited cases are likewise distinguishable and do not support Cloudflare's argument that the Board supposedly applied the wrong standards in evaluating the error in the Petition. *See* AOB, at 23-26, 29, 33. *American Signature, Inc. v. United States*, 598 F.3d 816, 819 (Fed. Cir. 2010), involved the "antidumping law," which "imposes special duties upon imports of merchandise sold at less than normal value to the detriment of a domestic industry." This decision has nothing to do with the Board's power to correct errors in petitions for *Inter Partes* Review; it

41

does not even have anything to do with patent law. Regardless, it is unclear why *American Signature, Inc.* would be helpful to Cloudflare given that the Court in that case found that although the governing "statute and the regulation clearly permit the sua sponte correction of a ministerial error by Commerce … within the period specified in the regulation," the at-issue ministerial error could not be corrected because it "was not corrected within this timeframe." *Id.* at 826, 828. In this case, the governing regulation permits the Board to "correct a clerical or typographical mistake in the petition." 37 C.F.R. § 42.104(c). But because the error in Cloudflare's petition was not clerical or typographical (which would be analogous, albeit in a completely different statutory context, to the sort of ministerial error at issue in *American Signature, Inc.*), the Board acted properly in declining to correct it.

   *Helfgott & Karas, P.C. v. Dickinson*, 209 F.3d 1328 (Fed. Cir. 2000), another case Cloudflare cites, is also inapposite. AOB, at 24-25. That case involved "small mistakes" "of form" in an international patent prosecution filed under the auspices of the Patent Cooperation Treaty ("PCT"). *Helfgott & Karas, P.C.*, 209 F.3d at 1329-30. The PCT Rules allowed a request for international examination to be filed with the international authority, the PTO in *Helfgott*, pursuant to a filing called a "Demand for International Preliminary Examination." The applicants filed such a Demand but mistakenly listed a combination of information (*e.g.*, application number, filing date, priority date, and applicants) from two different international patent applications,

one of which was abandoned. "Looking back with the clarity of hindsight, there is no real dispute now between the parties that the Demand was intended to relate to the '856 application," but given the mistakes in the Demand, "[w]hen it was presented with the document, … the Commissioner of the Patent and Trademark Office … interpreted the Demand as requesting preliminary examination of the '218 application, not the '856 application." *Id.* at 1331. Once they discovered the errors, the applicants requested that they be corrected, but the Commissioner declined to do so. The Court found that the Commissioner erred where he failed to follow PCT Rule 91.1(b), which "is legally binding on the Commissioner" and expressly provides that "[e]rrors which are due to the fact that something other than what was obviously intended was written in the international application or other paper shall be regarded as obvious errors." *Id.* at 1335-36. The Court held that "when PCT Rule 91.1 is correctly understood, it becomes clear that the Commissioner's consistently steadfast resistance to correction of the Demand was unreasonable." *Id.* at 1337.

*Helfgott & Karas, P.C.* is not applicable here. To start, like *In re Bennett* and *A. F. Stoddard & Co.*, *Helfgott & Karas, P.C.* involved mistakes of form akin to procedural, ministerial, clerical, or typographical mistakes. Moreover, like the other distinguishable cases cited by Cloudflare, *Helfgott & Karas, P.C.* involved correcting small mistakes of form so that they would "not overwhelm the correctness

43

of substance" in a patent application. *Id.* at 1330. The principles at play in *Helfgott & Karas, P.C.* were thus aimed at ensuring that mistakes of form in a patent application would not result in depriving otherwise meritorious applicants of patent rights. And, finally, *Helfgott & Karas, P.C.* has no application here because it involved the specific application of a PCT Rule that was legally binding on the Commissioner that required the Commissioner to permit the correction of "[e]rrors which are due to the fact that something other than what was obviously intended was written in the international application or other paper …." *Id.* at 1335. There is no authority, and Cloudflare cites none, that would permit (or require) the Board to apply a PCT Rule governing international patent applications to petitions for *Inter Partes* Review.[8]

Superior Fireplace Co. v. Majestic Prods. Co., 270 F.3d 1358 (Fed. Cir. 2001), is yet another inapposite case cited by Cloudflare. AOB, at 25-26. There, this Court affirmed, *inter alia*, the district court's finding that the patent owner's certificate of correction for an issued patent was invalid. That case involved the application of 35 U.S.C. § 255, which provides that "[w]henever a mistake of a clerical or typographical nature, or of minor character, which was not the fault of the Patent and

---

[8] Moreover, as explained below in Section II(B)(3), the error in Cloudflare's Petition was not "obvious" as that term is expressly defined in PCT Rule 91.1. Multiple sets of sophisticated patent counsel perpetuated the alleged "error," all uniformly failing to recognize it as "obvious."

Trademark Office, appears in a patent and a showing has been made that such mistake occurred in good faith, the Director may … issue a certificate of correction, if the correction does not involve such changes in the patent as would constitute new matter or would require re-examination." 35 U.S.C. § 255. The Court "interpret[ed] [35 U.S.C.] § 255 to allow broadening corrections of clerical or typographical mistakes." *Id.* at 1370. At the same time, however, the Court explained that "§ 255 … allow[s] a broadening correction of a typographical error only where it is clearly evident from the specification, drawings, and prosecution history how the error should appropriately be corrected." *Id.* at 1372. Because "the requested correction of the alleged mistake was not apparent from the specification, drawings, and prosecution history," the "alleged mistake [wa]s, therefore, not a clerical or typographical mistake correctable under § 255." *Id.* at 1375. Moreover, the Court interpreted the term mistake "of minor character" under § 255 as excluding "mistakes that broaden a claim." *Id.* And "[s]ince this was such a mistake," the Court "conclude[d] as a matter of law that it was not correctable by a certificate of correction under 35 U.S.C. § 255." *Id.* at 1376.

Cloudflare's reliance on *Superior Fireplace Co.* to support its argument that the Board has the authority to correct supposedly obvious, but not clerical or typographical, errors in a petition for *Inter Partes* Review is perplexing. *Superior Fireplace Co.* involved the application and interpretation of 35 U.S.C. § 255, which

governs certificates of correction for issued patents; it has never been applied to analyze an error (substantive, typographical, or clerical) in a petition for *Inter Partes* Review.  In any event, 35 U.S.C. § 255 is similar to 37 C.F.R. § 42.104, which allows for the correction of a "clerical or typographical mistake" in a petition for *Inter Partes* Review.  It is unclear how 35 U.S.C. § 255, even assuming it applied (it does not) in *Inter Partes* Review proceedings, would help Cloudflare argue that the Board has the authority to correct supposedly obvious, but not typographical or clerical, mistakes in a petition.  The primary focus of 35 U.S.C. § 255 is on the correction of "a mistake of a clerical or typographical nature" in an issued patent.  Although 35 U.S.C. § 255 also allows for the correction of mistakes "of minor character" in an issued patent, this Court has made clear that mistakes "of minor character" do not include mistakes that would, if corrected, broaden a patent's claims because such mistakes "must thus be viewed as highly important …."  *Superior Fireplace Co.*, 270 F.3d at 1375.  So too here.  Even if 35 U.S.C. § 255 applied here (it does not), the mistake in Cloudflare's Petition would, if corrected, add arguments that were not advanced in the Petition, meaning that such mistake must be viewed "as highly important" and not correctable.  *See id.*

Grasping at a further straw, Cloudflare also argues that "[t]he standard for recognizing error for 'documents in general' is whether it is 'apparent to [an] interested reader than [*sic*] an error was made, such that it would be unfair to enforce

46

the error.'"  AOB, at 29 (quoting *Biotec Biologische Naturverpackungen GmbH v.*

*Biocorp, Inc.*, 249 F.3d 1341, 1348 (Fed. Cir. 2001)).  Cloudflare's citation to this

case is misleading at best. Read in context, the Court in *Biotec* explained that "[a]n

error in the prosecution record must be viewed as are errors in documents in general;

that is, would it have been apparent to the interested reader that an error was made,

such that it would be unfair to enforce the error.  …  A person of reasonable

intelligence would not be misled into relying on the erroneous statement, for it is

contrary not only to the plain language of the claims and the specification, but also

to other statements in the same prosecution document." 249 F.3d at 1348.  More

specifically, in that case, "at one point in the prosecution Biotec … made the

argument that the starting starch was water-free." *Id.*  "Biotec state[d] that this is

readily seen as attorney error.  Biotec point[ed] out that dependent claim 18 is

specific to starch having a water content of 17%, thus making clear that pre-dried

starch is not the only starting material." *Id.*  In contrast, the *Biotec* defendant argued

that the error should be held against the patentee so as to limit the patent's claims in

the context of claim construction.  The district court disagreed, finding that the

claims were not so limited.  This Court affirmed, on the ground that "[w]hen it comes

to the question of which should control, an erroneous remark by an attorney in the

course of prosecution of an application or the claims of the patent as finally worded

and issued by the Patent and Trademark Office as an official grant, we think the law

47

allows for no choice.  The claims themselves control." *Id.* (internal quotation marks and citation omitted).

As with the other cases cited by Cloudflare, *Biotec Biologische Naturverpackungen GmbH* is inapposite.  The *Biotec* Court did not correct the attorney error in the at-issue prosecution history.  Instead, it affirmed the district court's finding that in the context of claim construction, as between "an erroneous remark by an attorney in the course of prosecution of an application" and "the claims of the patent as finally worded," the claim language controls.  *Id.*  There is no basis for applying this claim construction principle to create a standard in a proceeding for *inter partes* review that would allow the Board to correct supposedly obvious, but not typographical or clerical, errors in petitions.

In sum, Cloudflare strings together several unrelated, inapposite, and distinguishable cases, none of which was cited, or even mentioned, during the proceedings before the Board, to argue that the Board allegedly failed to apply the correct legal standards in evaluating the error in the Petition where it did not consider "whether Cloudflare's error was obvious or otherwise correctable."  AOB, at 23-31.  As noted, none of these cited cases were brought up to the Board.  None of Cloudflare's cited cases involved *Inter Partes* Review proceedings.  To the contrary, they all involved different statutes and/or regulations that have never been applied to correct allegedly obvious, but not typographical or clerical, errors in a petition for

48

*Inter Partes* Review. Cloudflare is thus asking this Court to create new precedent from inapposite cases based on a waived argument Cloudflare did not present to the Board. Because it would be error to do so, the Court should decline Cloudflare's invitation. Rather, the Court should affirm the Board's decision.

### 3. Even If Cloudflare's Erroneous Standard Applied (It Does Not), The Record Does Not Support Cloudflare's Characterization Of The Petition's Error As Obvious

Even assuming, *arguendo*, that Cloudflare's made-up standard regarding the correction of supposedly obvious, but not typographical or clerical, errors in a petition for *Inter Partes* Review applied, because the record does not support Cloudflare's characterization of the error as obvious, this Court should still affirm. Cloudflare argues that "the record supports a finding that the error is obvious and correctable," (AOB, at 34), but the opposite is true.

Missing from Cloudflare's Brief is the history of the at-issue error. As Sable explained to the Board in its Patent Owner's Response, on October 2, 2020, Palo Alto Networks, Inc., Dell Technologies Inc., VMware, Inc., Juniper Networks, Inc., Hewlett Packard Enterprise Company, and Aruba Networks, Inc. filed a Petition for *Inter Partes* Review of the '593 patent. Appx593. All of these sophisticated technology companies were represented by sophisticated patent counsel. Appx593.

Approximately seven months later, Cloudflare and SonicWall Inc. filed the at-issue Petition. As Sable explained to the Board, "[t]hese sophisticated technology

companies, too, were represented by sophisticated and experienced patent counsel. What is more, Cloudflare and SonicWall did not even start from scratch to formulate their own grounds or write their own petitions.  Rather, they largely copied—*verbatim*—the arguments advanced by the prior petition, filed by the prior sophisticated technology company petitioners." Appx593.

As Sable explained, "in the prior petition, the petitioners challenged dependent claims 17, 18, 37, and 38 under Yung alone, arguing: 'For the reasons discussed above regarding claims 7 and 27 [also challenged under Yung alone], and because Yung's 'traffic monitoring module 75' performs the same functions as the '593 patent's 'processors,' Yung discloses claims 17 and 37. …  For the reasons discussed above regarding claims 7 and 27 [also challenged under Yung alone], and because Yung's 'traffic monitoring module 75' performs the same functions as the '593 patent's 'processors,' Yung discloses claims 18 and 38.'" Appx594 (citing *Palo Alto Networks et al. v. Sable Networks, Inc.*, IPR2020-01712, Paper 6, 45; and 8). Thus, as Sable pointed out, "[t]here is **zero** evidence that this argument advanced by Palo Alto Networks, Inc., Dell Technologies Inc., VMware, Inc., Juniper Networks, Inc., Hewlett Packard Enterprise Company, and Aruba Networks, Inc. contained any errors, typographical or otherwise." Appx594 (emphasis in original).

In its Patent Owner's Response, Sable also noted that "[a]fter having seven months to review and analyze the prior petition, including with their retained

technical opinion declarant Dr. Jeffay, for any supposed errors, typographical or otherwise, Cloudflare and SonicWall drafted, checked over and re-read, and filed their Petition.  And as to this aspect of the Ground, Cloudflare and SonicWall, by and through their sophisticated and experienced counsel, made the exact same arguments in the Petition as the prior petitioners had made.  The Petition makes no arguments under Yung in combination with Copeland concerning dependent claims 17, 18, 37, and 38.  Instead, Petitioners copied the arguments previously advanced in *Palo Alto Networks et al. v. Sable Networks, Inc.*, IPR2020-01712." Appx594-595.

Moreover, Sable explained that "Petitioners cite the Declaration of their technical opinion declarant, Dr. Jeffay, to support their argument that dependent claims 17, 18, 37, and 38 are disclosed by Yung alone.  Dr. Jeffay parrots the language of the Petition but also states: 'it is my opinion that Yung discloses [17] and [37]," and "it is my opinion that Yung discloses [18] and [38].  Therefore, in my opinion, a POSA would have understood that Yung discloses [18] and [38]." Appx595 (citing Ex. 1003 [Jeffay Decl.], Appx1138, ¶ 194; Appx1139, ¶ 195).

In addition, Sable pointed out that "[t]he *later* actions, separate from those of *eight* unrelated sophisticated technology companies, of Splunk Inc. (… joined as a Petitioner to this proceeding) confirm that there was no typographical error.  On November 24, 2021, five days after the Board issued its Institution Decision, Splunk

filed its own Petition for *Inter Partes* Review of the '593 patent." Appx596 (citing *Splunk Inc. v. Sable Networks, Inc.*, IPR2022-00228, Paper 2 (filed November 24, 2021) (emphasis in original). "In its petition, Splunk challenged dependent claims 17, 18, 37, and 38 under Yung alone, making the exact same arguments as those advanced by Cloudflare and the prior petitioners. Although Splunk was aware of the Institution Decision when it filed its own Petition, it chose not to challenge dependent claims 17, 18, 37, and 38 under Yung in combination with Copeland. Splunk did not assert there was a typographical error, introduced no evidence that there was a typographical error, and made no attempt to explain away the supposed typographical error in the prior petitions." Appx596-597.

In short, as Sable previously established in the Board proceedings, the record is clear that the substantive error in the Petition—the failure to include any argument that claims 17, 18, 37, and 38 are disclosed by the combination of Yung and Copeland—was not obvious. If the error were obvious, it would not have been perpetuated over an extended timeframe and multiple IPR petitions by several sets of sophisticated technology companies and their sophisticated, experienced counsel—none of whom even hinted, let alone announced, that they thought there was any error present, obvious, typographical, or otherwise.

Moreover, Cloudflare's presentation in its Brief of the nested structure of the claims of the '593 patent supports the point that the error in the Petition was not

52

obvious but rather a reflection of Cloudflare's fundamental misunderstanding the '593 patent's claims. Cloudflare spends five pages of its Brief explaining, including through confusing diagrams, the claim structure of the '593 patent. AOB, at 7-11. In Cloudflare's own words, the claim structure of the at-issue claims of the '593 patent is "complicated." AOB, at 7. This only supports the fact that the error in the Petition was not obvious.

Finally, Cloudflare's claim that the Board and Sable supposedly understood the Petition's error does not establish that it is obvious. *See* AOB, at 34. To start, Cloudflare's characterization of Sable's supposed understanding of the Petition's error as simply being an obvious mistake is belied by the record. At trial, counsel for Sable explained that Sable believed Cloudflare "misapprehended … the claims" of the '593 patent. Appx663. As Sable's counsel told the Board, "We didn't understand this to be a typographical error …. We just thought that they didn't understand the claims." Appx666. In any event, contrary to Cloudflare's argument, Sable's understanding is not the key to determining this issue. *Cf. Microsoft Corp.*, 860 F. App'x at 713 ("While the understanding of an opposing party may be relevant to whether a petitioner's argument was fairly raised, it is not conclusive, and it does not change the content of the petition.").

Accordingly, even if Cloudflare's invented standard regarding the correction of supposedly obvious, but not typographical or clerical, errors in a petition for *Inter*

*Partes* Review applied here, the record does not support Cloudflare's characterization of the error at issue here as obvious. For this reason too, this Court should affirm.

### III. THE BOARD DID NOT ABUSE ITS DISCRETION IN FINDING THAT THE ERROR IN THE PETITION WAS NOT A CORRECTABLE ERROR

In the alternative, Cloudflare wrongly argues that the Board "abused its discretion by finding that Cloudflare's error was not a correctable, clerical error." AOB, at 35-36. Because the Board did not abuse its discretion in finding that Cloudflare's error was not a typographical or clerical error, this Court should affirm.

"It is of the utmost importance that petitioners in the IPR proceedings adhere to the requirement that the initial petition identify 'with particularity' the 'evidence that supports the grounds for the challenge to each claim." *Intelligent Bio-Systems, Inc. v. Illumina Cambridge, Ltd.*, 821 F.3d 1359, 1369 (Fed. Cir. 2016) (citing 35 U.S.C. § 312(a)(3)). "Unlike district court litigation—where parties have greater freedom to revise and develop their arguments over time and in response to newly discovered material—the expedited nature of IPRs bring with it an obligation for petitioners to make their case in their petition to institute. While the Board's requirements are strict ones, they are requirements of which petitioners are aware when they seek to institute an IPR." *Intelligent Bio-Systems, Inc.*, 821 F.3d at 1369.

54

The Board's finding that the error in Cloudflare's Petition was "not an isolated typographical error (or two), but rather one that pervade[d] the Petition" was not an abuse of discretion. *See* Appx36-38; Appx52-54. After "[h]aving considered" the Parties' arguments, the Board "decline[d] to read the Petition to include a contention that claims 17, 18, 37, and 38 would have been obvious in light of Yung and Copeland." Appx35. The Board's conclusion was based on the following reasoned analysis: "The Petition consistently contends that claims 17, 18, 37, and 38 would have been obvious in light of Yung alone. The summary table includes these claims in the Yung-only ground; the organizational structure includes these claims in that ground; and the substantive discussion of the claims refers to Yung and to other claims included in the Yung-only ground.'" Appx35-36 (internal citations omitted). In other words, because "the Petition never expressly contends that these claims would have been obvious in light of the combination of Yung and Copeland," the Board properly "decline[d] to interpret the Petition as including such a contention." Appx36.

Because it was not an abuse of discretion for the Board to decline to interpret the Petition as including a contention that claims 17, 18, 37, and 38 would have been obvious in view of Yung and Copeland, this Court should affirm. *See Microsoft Corp.*, 860 F. App'x at 713 ("[T]here is no plausible argument that Microsoft's petition challenged claim 18 based on obviousness over Obelix and Skillen with any

particularity whatsoever. … It is not the Board's job to cobble together assertions from different sections of a petition or citations of various exhibits in order to infer every possible permutation of a petitioner's arguments. Arguments in a petition must be made with particularity, not opacity, and the Board was certainly within its discretion to conclude that Microsoft's analysis of claim 18 within a section titled 'Claims 1-5, 8-12, 16-19, and 22-25 Are Anticipated by Obelix' was a challenge to claim 18 based only on anticipation by Obelix.").

Although Cloudflare argues, in a conclusory manner, that "[b]ecause the record shows that the error was clerical and Sable suffered no prejudice, the Board abused its discretion in refusing to correct the petition," (AOB, at 36), Cloudflare is wrong for the reasons explained above. Moreover, in the proceedings before the Board, Cloudflare cited several Board decisions finding errors in petitions for *Inter Partes* Review to be clerical or typographical in nature. *See* Appx561-562 (Cloudflare arguing that "the Board routinely relies on common sense and logic to understand the contentions presented in a petition despite typographical errors," and citing five Board decisions—none of which is cited to this Court on appeal—to support that argument). But those distinguishable Board decisions simply showed that the error in Cloudflare's Petition is not the sort of typographical or clerical error that is correctable. *See* Appx597-601 (Patent Owner's Sur-Reply distinguishing the Board decisions relied on by Cloudflare in Petitioners' Reply). After "[h]aving

considered these arguments" advanced by the Parties during the proceedings before the Board, the Board agreed with Cloudflare that it could "use 'common sense and logic to understand the contentions presented in a petition despite typographical errors,'" but determined that the error in the Petition was not a typographical error but rather a substantive failure to include an argument. Appx35 n.22. Because the Board did not abuse its discretion in making that determination, this Court should affirm.

IV. **SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S DECISION THAT CLOUDFLARE FAILED TO PROVE CLAIMS 17, 18, 37, AND 38 OF THE '593 PATENT UNPATENTABLE BASED ON THE STATUTORY GROUND IDENTIFIED IN THE PETITION**

It is undisputed that claims 17 and 18 of the '593 Patent depend indirectly from independent claim 9, and claims 37 and 38 of the '593 Patent depend indirectly from independent claim 29. Independent claims 9 and 29 each recite computing a "badness factor for the flow, wherein the badness factor provides an indication of whether the flow is exhibiting undesirable behavior." Appx72, at 9.2; Appx 73, at 29.2. Yung does not disclose these "badness factor" limitations. Appx129-130; Appx136-138. Yet, the only ground challenging dependent claims 17, 18, 37, and 38 is ground 1 of the Petition. Appx88, Appx129-130 (Petition alleging that "Yung discloses claims 17 and 37"; "Yung Discloses claims 18 and 38"). And ground 1 of the Petition is based on Yung alone. Appx88, Appx129-130.

Accordingly, in the Final Written Decision, the Board correctly explained that "each of these dependent claims [claims 17, 18, 37, and 38] includes the requirements of the respective independent claim, including the limitation requiring 'computing . . . a badness factor for the flow.'" Appx34 (citation omitted). The Board then found that "Petitioner fails to show that Yung teaches or suggests this limitation." Appx34 (citation omitted). As a result, the Board properly concluded that "Petitioner fail[ed] to demonstrate, by a preponderance of the evidence, that Yung alone renders obvious the subject matter recited in dependent claims 17, 18, 37, or 38." Appx34. Because the Board's finding that Yung alone does not render claims 17, 18, 37, or 38 obvious is supported by substantial evidence, this Court should affirm.

## **CONCLUSION**

For the foregoing reasons, this Court should affirm the Board's finding in the Final Written Decision that Cloudflare failed to show that claims 17, 18, 37, and 38 of the '593 patent are unpatentable.

Dated: August 9, 2023                 /s/ Daniel P. Hipskind_____
                                      Daniel P. Hipskind
                                      **BERGER & HIPSKIND LLP**
                                      9538 Brighton Way, Suite 320
                                      Beverly Hills, California 90210
                                      Telephone: 323-886-3430
                                      dph@bergerhipskind.com

                                      Kenneth J. Weatherwax
                                      **LOWENSTEIN & WEATHERWAX LLP**
                                      1016 Pico Blvd.
                                      Santa Monica, California 90405
                                      Telephone: 310-307-4503
                                      weatherwax@lowensteinweatherwax.com

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2023-1612

**Short Case Caption:** Cloudflare, Inc. v. Sable Networks, Inc.

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

[✓] the filing has been prepared using a proportionally-spaced typeface and includes  13,916  words.

[ ] the filing has been prepared using a monospaced typeface and includes _____ lines of text.

[ ] the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 08/09/2023

Signature: /s/ Daniel P. Hipskind

Name: Daniel P. Hipskind

Save for Filing